UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00130-JAW-2 |
| | ) | |
| TODD SHOREY | ) | |

**ORDER ON MOTION FOR PAYMENT OF CRIMINAL PENALTIES FROM SUBSTANTIAL RESOURCES RECEIVED DURING INCARCERATION PURSUANT TO 18 U.S.C. § 3664(n)**

In September 2018, the Court imposed a $5,000 fine on an inmate due immediately. Since then, the inmate has received over $9,000 in his Bureau of Prisons Inmate Trust Account from his wife but has only paid $250 of his fine. The Government moves for an order directing the Bureau of Prisons to deposit the funds in the inmate's trust account, less any income from prison wages, with the Clerk of Court pursuant to 18 U.S.C. § 3664(n). Because the Court concludes the deposits from his wife are "substantial resources" that fall within the statute, the Court grants the Government's motion and orders the Bureau of Prisons to turn over the funds in his Inmate Trust Account attributable to contributions from his wife.

**I.    BACKGROUND**

On September 25, 2018, this Court sentenced Todd Shorey to eighty-seven months imprisonment, five years supervised release, a $5,000 fine, and $100 special assessment for conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1). *Min. Entry* (ECF No. 150); *J.* (ECF No. 153). A lump sum payment of the fine was "due

immediately" and any amount Mr. Shorey was unable to pay at the time of judgment was "due and payable during the term of incarceration." *J.* at 7.

On October 13, 2020, the Government moved pursuant to 18 U.S.C. § 3664(n) for an order authorizing the Bureau of Prisons (BOP) to turn over to the Clerk of Court funds held in Mr. Shorey's BOP Inmate Trust Account to pay toward the outstanding fine balance. *Mot. for Payment of Criminal Penalties from Substantial Resources Received During Incarceration Pursuant to 18 U.S.C. § 3664(n)* (ECF No. 164) (*Gov't's Mot.*). The Government claimed that Mr. Shorey had paid $250 toward his fine with a remaining balance of $4,750. *Id.* at 1. The Government further asserted it "learned recently" that Mr. Shorey's BOP inmate trust account has a balance of $2,058.00, and contends this $2,058.00 qualifies as "receipt of substantial resources to [Mr. Shorey's] inmate trust account" and therefore Mr. Shorey should be "required to apply the value of such resources to any restitution or fine still owed." *Id.* (quoting 18 U.S.C. § 3664(n)).

After Mr. Shorey, who was unrepresented, failed to respond to the Government's motion, on November 5, 2020, the Court ordered Mr. Shorey to show cause and respond to its order, "either (1) agreeing to the motion, (2) objecting to the motion with specific reasons for the objection, or (3) requesting the appointment of counsel." *Order to Show Cause* (ECF No. 165). Mr. Shorey did not respond to either the Government's motion or the Court's order to show cause.

On December 15, 2020, the Court issued an order stating that, despite the lack of response from Mr. Shorey, it had some concerns with the Government's motion.

*Order on Mot. for Payment of Criminal Penalties from Substantial Resources Received During Incarceration Pursuant to 18 U.S.C. § 3664(n)* (ECF No. 166) (*Interim Order*). The Court cited several cases interpreting § 3664(n) and explained that it was "not inclined to order the turnover of the entirety of Mr. Shorey's account pursuant to § 3664(n), thereby depriving him of funds to pay for basic expenses like personal hygiene, without a preliminary showing of the source of the funds." *Id.* at 4. The Court also noted that there was a question of whether the money in Mr. Shorey's account constitutes "substantial resources" under § 3664(n). *Id.* Therefore, the Court ordered the Government to file a memorandum (1) "disclosing the sources of funds in Todd Shorey's inmate trust account" and (2) "addressing whether the funds constitute 'substantial resources' under 18 U.S.C. § 3664(n)." *Id.* at 5.

On January 4, 2021, Mr. Shorey requested appointment of counsel to assist him in filing a motion for compassionate release, *Mot. to Appoint Counsel* (ECF No. 167), which the Court granted three days later. *Appointment of Counsel & Scheduling Order* (ECF No. 171). On January 11, 2021, Mr. Shorey's appointed counsel, Attorney George Hess, requested permission to respond to the Government's motion for payment of criminal penalties, *Mot. for Permission to Respond to Gov't's Mot. for Payment of Criminal Penalties* (ECF No. 173), which the Court granted. *Order* (ECF No. 174).

On January 5, 2021, the Government filed a memorandum in response to the Court's December 15, 2020 order. *Mem. in Resp. to Order (ECF No. 166) on Mot. for Payment of Criminal Penalties from Substantial Resources Received During*

*Incarceration Pursuant to 18 U.S.C. § 3664(n)* (ECF No. 168) (*Gov't's Mem.*). On January 26, 2021, Mr. Shorey responded in opposition. *Resp. in Opp'n to Gov't's Mot. for Payment of Criminal Penalties from Substantial Resources Received During Incarceration Pursuant to 18 U.S.C. § 3664(n)* (ECF No. 177) (*Def.'s Opp'n*). The Government replied on February 4, 2021. *Reply in Further Supp. of Mot. for Payment of Criminal Penalties from Substantial Resources Received During Incarceration Pursuant to 18 U.S.C. § 3664(n)* (ECF No. 178) (*Gov't's Reply*).

## II.     PARTIES' POSITIONS

### A.     Government's Memorandum

The Government responds to the Court's Interim Order by first disclosing the source of funds and Mr. Shorey's use of the funds, and then addressing whether Mr. Shorey's funds constitute "substantial resources" under 18 U.S.C. § 3664(n). *Gov't's Mem.* at 1. Citing BOP records, the Government claims Mr. Shorey "has received a total of $10,074.78 from all sources from October 2018 to present." *Id.* at 1-2. The Government contends that of this total, $9,220.00 was transferred to Mr. Shorey via Western Union by his spouse, and only $784.56 is separately attributable to payroll wages Mr. Shorey received for his BOP job assignment. *Id.* at 2. A remaining $70.22 derives from a source the Government could not determine. *Id.* Therefore, less than one-tenth of Mr. Shorey's Inmate Trust Account funds derive from his prison wages. *Id.* The Government further states that as of January 5, 2021, Mr. Shorey's Inmate Trust Account balance was $1,593.72. *Id.* From November 2020 through January 5, 2021, the Government asserts that Mr. Shorey spent $297.85 at

4

the FCI Berlin Commissary, including several purchases for basic expenses related to personal hygiene, "though most appear to be for various kinds of snack food." *Id.*

The Government next argues that "[t]he funds [Mr. Shorey] received are 'substantial' within the meaning of the statute and subject to § 3664(n) turnover." *Id.* at 3. The Government cites caselaw and notes that "[w]hile some courts have narrowly interpreted [§ 3664(n)], others have ruled that deposits received from family members as well as BOP earnings may qualify for turnover." *Id.* The Government clarifies that "on the basis of the law cited and concerns raised by the Court," it "does not seek the percentage of [Mr. Shorey's] funds apparently attributable to any payroll received from the BOP." *Id.* Because about one-tenth of the funds deposited into Mr. Shorey's Inmate Trust Account since he began his period of incarceration is derived from prison wages, approximately ninety percent of Mr. Shorey's resources is available to satisfy the outstanding fine. *Id.* The Government argues that the remainder—"$1,434.348" as of January 5, 2021—is "substantial." *Id.* at 4.

The Government contends that in just over two years, Mr. Shorey "has received funds from his spouse nearly double the amount of his fine," and "while the case law provides no litmus test for the quantum of the funds required, what currently remains in [Mr. Shorey's] Inmate Trust Account is comparable to amounts found sufficient by other courts." *Id.* The Government also asks the Court to consider Mr. Shorey's funds relative to his income while incarcerated, which shows that his prison wages "pale in comparison" to the payments received from his spouse. *Id.* at 4-5.

5

The Government concludes by asking that the Court "authorize and direct the BOP to turnover to the Clerk of Court ninety percent ($1,434.348) of the substantial funds held in [Mr. Shorey's] BOP inmate trust account for payment toward the outstanding fine due in this case, pursuant to 18 U.S.C. § 3664(n)." *Id.* at 5.

### B. Todd Shorey's Opposition

Mr. Shorey opposes the Government's motion, first arguing that, under § 3664(n), $1,434.34 is not substantial. *Def.'s Opp'n* at 2. Citing dictionary definitions, Mr. Shorey contends that "$1400.00 is not a considerable amount of money for an inmate to have in his trust account for purposes of meeting ordinary expenses that commonly arise in prisons, such as telephone calls to family or friends, hygiene products, food or snacks not provided by the prison, or other miscellaneous expenses." *Id.* Citing cases from the Fifth and Ninth Circuits, he further argues that "substantial resources" are "resources which are similar to inheritance, settlement, or judgments," which are "amounts arising from immediate inflow of funds, not small monthly deposits made by a spouse to assist her husband in meeting his necessary expenses." *Id.* at 2-3. He concludes that "the small amount of money periodically deposited to Mr. Shorey's trust account by his wife is analogous to the 'gradual accumulation of prison wages which [the *Hughes*] court found not to be substantial resources.'" *Id.* at 3 (quoting *United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019)).

6

### C. Government's Reply

The Government reasserts that "the Court should authorize and direct the BOP to turnover to the Clerk of Court ninety percent of the substantial funds held in [Mr. Shorey's] trust account as payment toward the outstanding fine due in this case." *Gov't's Reply* at 1. First, the Government contends that Mr. Shorey "focuses too narrowly on the approximately $1,500 that remains in his account, rather than on the more than $10,000 he received since October 2018, $9,220 of it transferred by his spouse." *Id.* Mr. Shorey's "receipt of such funds from his spouse were nearly double the amount of his fine, and constitute a substantial, considerable amount by any measure." *Id.* The Government next argues that the approximately $1,500 remaining in Mr. Shorey's Inmate Trust Account "squarely fits" within § 3664(n)'s definition of "substantial resources." *Id.* at 2. Finally, the Government rejects any suggestion that the deposits from Mr. Shorey's wife were simply "small monthly deposits made by a spouse to assist her husband in meeting his necessary expenses" or were a "small amount of money" "analogous" to his prison wages. *Id.* (quoting *Def.'s Opp'n* at 2-3). Mr. Shorey received "between one and four deposits each month from his spouse, with each individual deposit ranging from $70 to $300, totaling between $100 and $590 month-to-month" and "less than one-tenth of [Mr. Shorey's] Inmate Trust Account funds throughout the course of his incarceration are attributable to prison wages." *Id.*

### III.   DISCUSSION

####   A.   Punishment to Fit the Crime

When the Court sentenced Mr. Shorey on September 25, 2018, it imposed a $5,000 fine, in addition to eighty-seven months of incarceration. In imposing the fine, the Court considered that Mr. Shorey's involvement in trafficking heroin had been purely for financial gain. Mr. Shorey was not a drug addict and had no history of drug dealing. Instead, when the local news media reported that law enforcement had arrested members of a drug trafficking organization in central Maine, Mr. Shorey and Jamie Akerson, Mr. Shorey's cohort, saw a business opportunity and set about trying to find a wholesale drug dealer who would supply them with heroin for sale to local addicts. After searching out of state for a drug dealer, they located a wholesale heroin supplier in Massachusetts and Connecticut and with this supply, developed a drug distribution network in Maine. In time, Mr. Shorey and Mr. Akerson were flooding the small communities surrounding the area they lived with staggering amounts of heroin, receiving regular shipments of $15,000 to $20,000 worth of heroin from their supplier.

At his sentencing, the Court also considered Mr. Shorey's financial resources. He had been working as a truck driver, occasionally earning by extrapolation a gross annual income in excess of $100,000. In addition, though not a wealthy man, Mr. Shorey had a positive net worth in excess of $60,000.

At his sentencing hearing, therefore, the Court imposed the $5,000 fine because a punishment in the form of a financial penalty fit a crime motivated by

greed. The Court ordered a lump sum payment due immediately with any amount Mr. Shorey was unable to pay immediately due and payable during the term of incarceration. To date, Mr. Shorey has paid only $250 of that amount, leaving a fine balance of $4,750. The most recent BOP records from January 5, 2021 show Mr. Shorey has a balance of $1,593.72 in his BOP Inmate Trust Account and the Government seeks ninety percent, or $1,434.35, of that amount.[1]

### B. The Statutory Language

The question before the Court is whether the Government may reach that money and apply it to Mr. Shorey's outstanding fine balance pursuant to 18 U.S.C. § 3664(n). Section 3664(n) states:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

The two statutory standards, "substantial resources" and "any source," overlap; however, the Court separately discusses them.

### C. Any Source

Mr. Shorey argues the Government cannot reach his funds because $1,434.35 is not "substantial resources" and § 3664(n) does not apply to "small monthly deposits made by a spouse to assist her husband in meeting his necessary expenses." *Def.'s Opp'n* at 2-3.

---

[1] The Court does not know how much money in Mr. Shorey's Inmate Trust Account is attributable to prisons wages versus deposits from his wife because the funds have become commingled. However, in the past two years, 91.51% of funds (9,220.00 / 10,074.78 = .9151) are attributable to deposits by his wife. Therefore, the ninety percent figure used by the Government is a fair estimate.

9

Surprisingly few courts have confronted § 3664(n). Only one court in the First Circuit has considered the statute. In *United States v. Huard*, No. 06-cr-117-1-SM, 2017 U.S. Dist. LEXIS 170115 (D.N.H. Oct. 13, 2017), the defendant was convicted of bank robbery and was ordered to pay restitution to the bank in the amount of $18,450, due immediately. *Id.* at *1. The government asserted the defendant maintained about $7,585.19 in his inmate trust account and sought to apply that entire amount to his restitution obligation. *Id.* at *1-2. The *Huard* Court held that to the extent the funds in the defendant's account were attributable to an inheritance, those funds must be applied to his restitution obligation under § 3664(n). *Id.* at *2.

Some courts have declined to capture prison wages, not under the "any source" language, but because they are not "substantial resources." *See United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019) ("We do not think the gradual accumulation of prison wages constitutes 'substantial resources' such that it fits within § 3664(n)'s ambit; rather we think this provision refers to windfalls or sudden financial injections"); *United States v. Poff*, 781 F. App'x 593, 595 (9th Cir. 2019) ("To the extent any of [defendant's] $2,663.05 account balance is comprised of accumulated prison wages, we agree with the Fifth Circuit that those funds do not qualify under § 3664(n)"). Another court has held "periodic pension payments do not fall under § 3664(n), at least when the earnings are known to the Government at the time of sentencing." *United States v. Foster*, No. 3:16-CR-0375-B, 2019 U.S. Dist. LEXIS 155734, at *9 (N.D. Tex. Sept. 12, 2019).

Consistent with *Huard*, the Court is dubious about adopting a constrained reading of the "any source" language of § 3664(n), especially in view of the statute's inclusion of restitution obligations along with fines. Simply put, the "any source" language of § 3664(n) does not contain any apparent limitation and if Congress had intended to exempt specific sources from the provisions of § 3664(n), it could have easily done so. Nevertheless, the Court need not resolve the issue, because the Government no longer seeks the percentage of Mr. Shorey's funds attributable to payroll money Mr. Shorey received from the BOP, *Gov't's Mem*. at 3, and unlike the known pension payments in *Foster*, the Court was not aware when it sentenced Mr. Shorey that his wife would deposit significant amounts of money into his prison account. Furthermore, however "any source" might be restrictively interpreted, there is no reason to conclude that it would not capture funds sent to an inmate by a spouse.

The Court's decision is made more difficult by Mr. Shorey's assertion, made for the first time in a reply brief in support of his pending motion for compassionate release, that while his wife deposited the money into his account, the money actually came from his mother. *Reply to Gov't's Resp. in Opp'n to Def.'s Pet. for Compassionate Release* at 3 (ECF No. 191). Mr. Shorey claims that his wife "suffers from Lupus, is seriously ill, and in need of his care and financial support," and states that "his mother, who lives nearby, has been helping his wife with her financial needs." *Id*. The Court sympathizes with Mr. Shorey's situation, but the statute's broad "any source" language does not allow a court to make an equitable assessment of the source of the funds and declare some sources outside the reach of the statute.

11

D.  **Substantial Resources**

The friction in the statute centers on what is meant by "substantial resources." Here, it seems sensible to interpret this language as an indication that Congress did not intend to deprive inmates of the modest sums they are allowed to earn in prison jobs to pay for basic expenses, such as items of personal hygiene, or small treats, such as candy bars.

This Court agrees with other courts that have found amounts like the $9,220 Mr. Shorey received from his wife to be "substantial resources" within § 3664(n)'s ambit. *See United States v. Sabato*, No. 3:02-cr-236 (VLB), 2021 U.S. Dist. LEXIS 40595, at *3-7 (D. Conn. Mar. 4, 2021) (ordering turnover of all but $450 of a $4,249.55 account balance, noting that the defendant received "third party deposits from Western Union ranging from $50 to $300 on a somewhat monthly basis totaling $3,350 in the last 12 months" and "[f]airness and § 3664(n) do not allow [defendant] to enjoy substantial financial resources while remaining in default simply because he is incarcerated"); *United States v. Pulliam*, No. 4:14-CR-00156-MAC-CAN, 2017 U.S. Dist. LEXIS 195302, at *5 (E.D. Tex. Oct. 9, 2017), *aff'd*, 2017 U.S. Dist. LEXIS 194291 (E.D. Tex. Nov. 22, 2017) (ordering turnover of all but $500 of a $3,530.78 account balance, explaining defendant received "regular transfers of funds from Western Union . . . between $50-$200 and are sometimes made several times during a month," and these deposits constitute "substantial resources"); *see also United States v. White*, 745 F. App'x 646, 648 (7th Cir. 2018) (affirming district court's order authorizing the BOP to apply $5,000 in funds deposited by family members to

defendant's restitution obligation, noting that "an inmate who receives money from any source *must* apply it to restitution still owed; the money from his family is not exempt") (emphasis in original) (internal citations omitted).

Contrary to Mr. Shorey's contentions, the Court concludes $1,434.35 is "substantial." *See United States v. Caldwell*, No. 2:03-CR-00696-DAK, 2021 U.S. Dist. LEXIS 29046, at *3-4 (D. Utah Feb. 16, 2021) (ordering turnover of $1,500); *United States v. Kimoto*, No. 07-cr-30089-MJR, 2016 U.S. Dist. LEXIS 69819, at *4 (S.D. Ill. May 27, 2016) (ordering turnover of $768.40). This is especially so considering Mr. Shorey has received $9,220.00 from his wife over the past two years, compared to only $784.56 from prison wages. Relative to his prison wages, the deposits from his wife are substantial. *See United States v. Korbe*, No. 2:09-cr-0005-NR, 2020 U.S. Dist. LEXIS 69649, at *12 (W.D. Pa. Apr. 21, 2020) ("[Section 3664(n)] appears to view what is or isn't 'substantial' from the viewpoint of the defendant's income while incarcerated").

Moreover, $1,434.35 is about 28% of the original fine amount of $5,000 and over 30% of the remaining $4,750 balance of the fine. Thus, the amount of money that the Government is seeking from Mr. Shorey's Inmate Trust Account will go a long way to reduce his remaining financial obligation under the criminal judgment.

On the record before the Court, the Court finds that Mr. Shorey must make some payment. BOP records show that between October 12, 2018 and January 5, 2021, Mr. Shorey received $10,074.78 from all sources. Of this total amount, $9,220.00 came from his wife via Western Union in periodic payments ranging from

13

$70 to $300 per payment and totaling between $100 and $590 per month, $784.56 came from prison wages, and $70.22 came from sources the BOP records do not identify. Yet during this same time period, Mr. Shorey paid only $250 of his $5,000 fine. Mr. Shorey seems to have adopted a cavalier attitude toward his legal obligation to pay the fine the Court ordered, making his financial obligation secondary to whatever he is spending his money on while incarcerated.

The Court acknowledges that there is a policy issue underlying this question. On the one hand, family members and friends outside prison should be encouraged to financially assist inmates to make their lives more tolerable and on the other hand, the payment of a fine (or restitution obligation) is not optional. Part of the punishment must be that an inmate who caused harm by the commission of a criminal act or who the Court has determined has the capacity to pay a fine should be required to make payments as ordered by the sentencing court. Indeed, Mr. Shorey's criminal judgment required him to pay the full fine balance immediately, and if unable to do so, to make payments during the term of incarceration. If Mr. Shorey had been more cognizant of his obligation to comply with the Court order and had made more than a token effort to comply with the financial penalty in his sentence, this order might not have been necessary.

While Mr. Shorey must turn over the substantial resources in his Inmate Trust Account, the Court does not wish to deprive Mr. Shorey of funds to pay for basic expenses like personal hygiene. Turnover of $1,434.35 leaves Mr. Shorey with $159.37 in his Inmate Trust Account. In the Court's view this is a sufficient amount

for basic expenses, particularly in light of commissary receipts submitted by the Government, which show basic expenses like deodorant and nail clippers cost only $2.80 and $0.90 respectively.

Finally, this order brings Mr. Shorey closer to paying his fine in full. The Court imposed a $5,000 fine and with the order and his prior payments, Mr. Shorey will owe $3,315.65. His payments while incarcerated necessarily lessen the amount he will owe when released.

## IV. CONCLUSION

The Court GRANTS the Government's Motion for Payment of Criminal Penalties from Substantial Resources Received During Incarceration Pursuant to 18 U.S.C. § 3664(n) (ECF No. 164). The amount requested in the Government's Motion was later reduced in the Government's Memorandum in Response to Order (ECF No. 166) on Motion for Payment of Criminal Penalties from Substantial Resources Received During Incarceration Pursuant to 18 U.S.C. § 3664(n) (ECF No. 168). Accordingly, the Bureau of Prisons is ORDERED to release $1,434.35 held in Todd Shorey's inmate trust account to the Clerk of this Court as payment toward Mr. Shorey's fine.[2]

---

[2] The information in the record regarding Mr. Shorey's inmate trust account is almost three months old and the parties have not updated it. The figures may be inaccurate, and it may be that this order does not accurately reflect the current state of affairs. If so, the Court will be receptive to a motion from either Mr. Shorey or the Government to update the status of his inmate trust account. It is the Court's intention to sequester Mr. Shorey's earnings from his prison employment and leave those to him and to require the balance from other sources be turned over to the Government to be applied to his fine.

SO ORDERED.

                              <u>/s/John A. Woodcock, Jr.</u>
                              JOHN A. WOODCOCK, JR.
                              UNITED STATES DISTRICT JUDGE

Dated this 26th day of March, 2021